NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DOROTHY M. STEWART, | : : : | Civil Action No. 3:18-cv-14923-BRM-LHG |
| Plaintiff, | : : |  |
| v. | : : | OPINION |
| MEGAN J. BRENNAN, Postmaster General, United States Postal Service | : : : : |  |
| Defendant. | : : |  |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss filed by Defendant Megan J. Brennan, Postmaster General, United States Postal Service ("Brennan" or "Defendant") seeking to dismiss Plaintiff Dorothy Stewart's ("Stewart" or "Plaintiff") Complaint (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 10.) Stewart filed an Opposition to Brennan's Motion to Dismiss (ECF No. 13) and Brennan filed a Reply Brief to Stewart's Opposition to the Motion to Dismiss. (ECF No. 15). Having reviewed the submissions filed in connection with the motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Defendants' Motion to Dismiss the Amended Complaint is **GRANTED** and the Amended Complaint is **DISMISSED WITH PREJUDICE**.

    **I.**    **BACKGROUND**

        **A. Factual Background**

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to the plaintiff.

*See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Furthermore, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

The facts of this action are identical to those of a prior litigation brought by Stewart before this Court, *Stewart v. Brennan*, Civ. No. 17-167-BRM-LHG ("*Stewart I*"), in which this Court granted Brennan's Motion to Dismiss.[1] Nevertheless, the Court recites the facts as alleged in the Complaint in this matter.

Stewart was formerly employed as a letter carrier for the United States Postal Service ("USPS"). (ECF No. 1 ¶ 7.) On September 24, 1999, Stewart suffered a work-related injury to her left knee. (United States Merit Systems Protection Board ("MSPB") Decision (ECF No. 10-6, Ex. C at 2).) Stewart's injury prevented her from fulfilling her duties as a letter carrier, and therefore, she was reassigned to sedentary duties. (*Id.* at 2-3.) Due to technological advances in early January 2010, clerical work within Stewart's restrictions was greatly reduced. (*Id.* at 3.) Consequently, on January 14, 2010, Stewart accepted a "modified duty assignment which included 1-2 hours of casing mail on a particular route, if available, on a daily basis." (*Id.*)

On January 28, 2010, Stewart filed a Notice of Recurrence form[2] with the Office of Workers' Compensation Programs ("OWCP") in which she contended that as of January 14, 2010, she was "often being sent home due to no work being available, the result of the agency's [NRP]."

---

[1] Notably, the complaint in *Stewart I* raised the same issues and causes of action as does the Complaint in this matter, and the two complaints are almost identical verbatim.

[2] A Notice of Recurrence form is filed when an employee experiences a recurrence of disability "mean[ing] . . . an inability to work that takes place when a light-duty assignment made specifically to accommodate an employee's physical limitations due to his or her work-related injury or illness is withdrawn." 20 C.F.R. § 10.5(x).

(*Id.*) The OWCP accepted the claim on March 8, 2010. (*Id.*) Stewart began receiving OWCP benefits on September 25, 2011, however, on November 27, 2011, the OWCP terminated her benefits because it determined she was capable of returning to her duties as a letter carrier without restriction. (*Id.* at 4-5.)

On November 29, 2012, after Stewart refused to return to her duties as a letter carrier, the USPS placed her on leave without pay. (*Id.*) Stewart never reapplied for full status employment with the USPS, but she did request to return to work within her previous restrictions. (*Id.* at 5.) Between January 31 and July 5, 2013, the USPS sent Stewart several notices requesting that she provide medical documentation to support her absence. (*Id.* at 6.) On July 8, 2013, the USPS issued Stewart a 14-day "no time off" suspension for failing to follow its instructions. (*Id.* at 7.) On July 30, 2013, Stewart submitted her retirement application to the USPS, and she officially retired on November 29, 2013. (*Id.*)

### i. The *Pittman* and *McConnell* Actions

*Pittman fka Walker v. Donahue*, EEOC Case No. 541-2008-00188X (the "*Pittman* Action") was an administrative class action in which the Equal Employment Opportunity Commission's ("EEOC") Office of Federal Operations ("OFO") affirmed class certification of a national class of employees with disabilities who claimed their hours had been limited due to their disabilities since 2000. (ECF No. 10-4, Ex. A at 2.)[3] The class period spanned from March 24, 2000 through December 31, 2012. (*Id.* at 2-3.)

During this time period, another USPS employee brought a separate action alleging denial of reasonable accommodations under the National Reassessment Process ("NRP"). (ECF No. 10-

---

[3] Specifically, the *Pittman* Action class consisted of "all permanent rehabilitation employees whose duty hours have been restricted, from March 23, 2000 . . . allegedly in violation of the Rehabilitation Act of 1973." (ECF No. 10-4, Ex. A at 2.)

3

4, Ex. A at 12.) This administrative class action (the "*McConnell* Class Action") was certified to cover claims alleging the denial of reasonable accommodations under the NRP to disabled USPS employees from May 5, 2006 through July 1, 2011. (*Id.*)

### ii. Stewart's Administrative and Previous Federal Actions

On December 17, 2012, Stewart filed a class action mixed case appeal to the MSPB alleging she was constructively suspended or removed without procedural due process and discriminated against based on her disabilities. (*Id.* ¶ 8.) Specifically, Stewart alleges: the USPS violated her – as well as other class members' – due process rights to notice and opportunity to challenge the constructive suspensions and removals; the USPS committed harmful procedural error adversely affecting Stewart by denying them procedural rights afforded in 5 C.F.R. Part 752; the USPS violated the Rehabilitation Act and the Americans with Disabilities Act ("ADA") by refusing to allow Stewart and other class members the opportunity to work as individuals with disabilities; and the USPS breached the Privacy Act by violating the privacy rights of Stewart and other class members. (*Id.*)

On June 14, 2010, Stewart signed and submitted a claim form and release (the "*Pittman* Release") asserting her rights to recovery in the *Pittman* Action. (*Pittman* Action Claim Form and Release (ECF No. 10-10, Ex. G).) In the *Pittman* Release, Stewart indicated, among other things, that she worked as a "permanent rehabilitation employee" at some points between 2000 to 2012, during which time her normal work hours were either restricted or denied. (*Id.*)[4] The *Pittman*

---

[4] The *Pittman* Release specified, *inter alia*, that: (1) the claims process is the "sole remedy" for any claims covered by the *Pittman* Action; (2) executing the *Pittman* Release would result in the surrender of any right to appeal the *Pittman* Action to the EEOC or "any right . . . to file a civil action in a federal court related to the claims in the [*Pittman* Action]; and (3) submitting the *Pittman* Release would result in a "permanent and unconditional" release of "all outstanding claims, complaints, administrative complaints, or appeals . . . arising from any restriction of [] duty

Action settled on April 3, 2014, thereby "fully and finally resolv[ing] the claims of the potential class members regarding the challenged practice." (ECF No. 10-6, Ex. C at 7-8.) Furthermore, the *Pittman* Action settlement also prohibited the right to an "opt out" from the class action. (*Id.*)

In a decision issued on October 28, 2014, which became final on January 2, 2015, the MSPB Administrative Judge dismissed Stewart's appeal on jurisdictional grounds due to her status as a class member in the *Pittman* Action. (ECF No. 1 ¶ 11; ECF No. 10-6, Ex. C at 2.)[5] Similarly, on June 12, 2015, the EEOC dismissed Stewart's EEO complaint determining that it was subsumed by the *Pittman* Action. (ECF No. 10-11, Ex. H.)

On January 10, 2017, Stewart filed a civil action before this Court against Brennan, *Stewart I*, seeking to initiate a class action against the USPS for disability discrimination despite the *Pittman* Action settlement. (Civil No. 17-167, ECF No. 1.) On June 30, 2017, Brennan filed a Motion to Dismiss Stewart's complaint arguing, *inter alia*, that the *Pittman* Action settlement precluded any recovery to Stewart. (Civil No. 17-167, ECF No. 11.) On March 19, 2018, this Court issued an Opinion and Order granting Brennan's Motion to Dismiss and dismissing the complaint with prejudice. (Civil No. 17-167, ECF Nos. 18 & 19.) On April 16, 2018, Brennan filed a Motion for Reconsideration of this Court's March 19, 2018 Opinion and Order (Civil No. 17-167, ECF No. 20), which this Court denied via an Opinion and Order issued on September 18, 2018. (Civil No. 17-167, ECF Nos. 25 & 26.) On October 11, 2018, Stewart filed a Notice of Appeal to the

---

hours by the USPS between March 24, 2000 and December 31, 2012," which are alleged to violate the Rehabilitation Act. (ECF No. 10-10, Ex. G.)

[5] Stewart was given until January 2, 2015 to filed a Petition of Review ("PFR") to appeal the MSPB's decision. (ECF No. 10-12, Ex. I at ¶ 2.) Ultimately, Stewart's PFR was dismissed as untimely filed. (*Id.* at ¶ 6.) Thereafter, Stewart filed a complaint with the National EEO Investigative Services Office ("NEEISO"). (ECF No. 10-13, Ex. J.) On May 23, 2016, the NEEISO dismissed Stewart's complaint on the grounds that it was identical to her previously filed EEO complaint. (ECF No. 10-15, Ex. L.)

Third Circuit Court of Appeals of this Court's Opinions and Orders dismissing the complaint in *Stewart I* and denying her Motion for Reconsideration. (Civil No. 17-167, ECF No. 27.) Stewart's appeal is still pending.

### B. Procedural History

On October 12, 2018, Stewart filed the Complaint against Brennan repeating many of the same allegations from the complaint in *Stewart I* verbatim. (ECF No. 1.) The Complaint does not explicitly recite causes of action, but asserts Stewart's claims are not subsumed by the *Pittman* or *McConnell* Actions and "seeks a jury trial with *de novo* review of the discrimination claims and review of the non-discrimination claims under the controlling evidentiary standards." (ECF No. 1 ¶¶ 44-45.)

On February 15, 2019, Brennan filed a Motion to Dismiss the Complaint. On March 22, 2019, Stewart filed an Opposition to Brennan's Motion to Dismiss (ECF No. 13) and on March 29, 2019, Brennan filed a Reply Brief to Stewart's Opposition to the Motion to Dismiss. (ECF No. 15).

### II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A

court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

7

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

### III. DECISION

Defendants argue the Complaint should be dismissed as Stewart's claims are barred by the doctrine of *res judicata*, or in the alternative, because her claims are subsumed by the class action settlement in the *Pittman* Action, from which Stewart has failed to distinguish her claims. (ECF No. 10-2 at 17-27.) Additionally, Brennan argues the Complaint should be dismissed as, notwithstanding the *Pittman* Action settlement, the exclusive remedy for Stewart's allegations of disability discrimination is an action under the Rehabilitation Act, and Stewart has only pled violations of the ADA. (*Id.* at 28-29.) Stewart argues that *res judicata* is inapplicable in this matter as there has "never been a full, final and unappealable adjudication that Stewart is a Pittman class member." (ECF No. 13 at 2-3.)

The doctrine of *res judicata* bars plaintiffs from bringing causes of action that were already adjudicated in an earlier action between two parties or that could have been determined in an earlier action. *Watkins v. Resorts Int'l Hotel & Casino, Inc.*, 591 A.2d 592, 597 (N.J. 1991). "*Res judicata*, or claim preclusion, is a court-created rule that is designed to draw a line between the meritorious claim on the one hand and the vexatious, repetitious and needless claim on the other." *Purtner v. Heckler*, 771 F.3d 682, 689-90 (3d Cir. 1985) (footnote and citation omitted). The doctrine "bars

8

a party from initiating a second suit against the same adversary based on the same 'cause of action' as the first suit." *Duhaney v. Atty. Gen. of U.S.*, 621 F.3d 340, 347 (3d Cir. 2010) (citing *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008)). "A party seeking to invoke *res judicata* must establish three elements: '(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.'" *Id.* (quoting *In re Mullarkey*, 536 F.3d at 225). "The doctrine of *res judicata* bars not only claims that were brought in a previous action, but also claims that could have been brought." *In re Mullarkey*, 536 F.3d at 225 (citing *Post v. Hartford Ins. Co.*, 501 F.3d 154, 169 (3d Cir. 2007)).

Here, the Complaint does nothing more than re-litigate matters raised in both the complaint in *Stewart I* as well as in the *Pittman* Action, from which Stewart is barred from seeking relief from this Court. The elements necessary to invoke *res judicata* are clearly satisfied in this instance: a final judgment on the merits was rendered in *Stewart I*; the parties are identical; and this Complaint, although worded slightly differently at times, concerns the exact same conduct and causes of action as does *Stewart I*. Indeed, Stewart even explicitly seeks to re-litigate *Stewart I*, including allegations in the Complaint that her claims in *Stewart I* were "viable" and should not have been dismissed. (ECF No. 1 ¶¶ 17, 19, 22, 44-45.) Furthermore, Stewart readily admits that she filed her "Claim for Individual Relief" in the *McConnell* Action "purely as a protective measure," as *Stewart I* is the main event regarding her claims of disability discrimination against the USPS. (ECF No. 1 ¶¶ 22, 44.) Accordingly, Stewart's suit is barred by the doctrine of *res judicata*.[6]

As this Court has determined that Stewart's suit is precluded by *res judicata*, it need not

---

[6] Stewart's "protective" claim submitted in the *McConnell* Action asserts the identical disability claim as in the *Pittman* Action and as analyzed by this Court in *Stewart I*. (ECF No. 10-8, Ex. E.)

analyze Brennan's additional arguments that Stewart's claims are subsumed by the *Pittman* Action and that, in the absence of the *Pittman* Action, her exclusive remedy would have been an action pursuant to the Rehabilitation Act. Nevertheless, this Court notes that it explicitly held in *Stewart I* that Stewart's claims are indeed subsumed by the *Pittman* Action. (Civil No. 17-167, ECF No. 18 at 6-7.) Accordingly, Brennan's Motion to Dismiss the Complaint is **GRANTED**.

**IV.  CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED** and the Complaint is **DISMISSED WITH PREJUDICE**.

**Date: September 4, 2019**                             */s/ Brian R. Martinotti*_____
                                                        **HON. BRIAN R. MARTINOTTI**
                                                        **UNITED STATES DISTRICT JUDGE**